ORIGINAL

MIN:▮▮▮▮▮▮▮▮▮    Lender Loan Number: ▮▮▮▮

## COMMERCIAL PROMISSORY NOTE

1. Promise to Pay. FOR VALUE RECEIVED, **ALLEO HOLDINGS CORPORATION** (the "Borrower"), a Texas corporation with a principal place of business of 2342 King Richard Dr, Grand Prairie, TX 75050 promises to pay to the order of **RCN Capital, LLC**, a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, or its assigns (collectively, the "Holder"), the principal sum of **Three Hundred Eighty-Four Thousand Dollars and No Cents ($384,000.00)** (the "Loan"), together with interest on the Loan computed from the date advanced (the "Commencement Date"), all as hereinafter provided, subject to the terms and conditions of a certain Commercial Loan Agreement (the "Loan Agreement"), executed by Borrower and Holder, and upon the following terms, agreements, and conditions:

2. Interest. Interest shall accrue on the unpaid Loan at the rate of 6.925% per annum. Interest is calculated on the basis of a 360-day year and a 30-day month.

3. Maturity Date. The unpaid Loan, all accrued interest thereon, and all other fees or charges shall be due and payable on October 1, 2054 (the "Maturity Date"), provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration, or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate.

4. Payments. Beginning on November 1, 2024 and continuing on the first (1ˢᵗ) day of each month thereafter, through and including the Maturity Date, Borrower shall make monthly principal and interest payments in accordance with this Section, which payments shall be applied to the outstanding principal balance of the Note. Holder shall calculate the total amount of principal payments payable from October 1, 2024 to the Maturity Date based upon a 30-year amortization schedule, an amortization period which begins on October 1, 2024, a fixed interest rate equal to the interest rate in effect as of October 1, 2024, and the outstanding principal balance of the Note as of October 1, 2024. The monthly principal payment shall equal the total amount of principal payable for such period (calculated as set forth above) divided by the number of monthly payments during such period. The initial monthly principal and interest payment amount is **$2,535.45**. The foregoing notwithstanding, upon any additional advance of funds Holder shall recalculate the amount of the monthly principal and interest payment owing for the remainder of the Note term, based on the new outstanding principal balance and the interest rate then in effect, and such revised principal and interest payment shall be due commencing on the first (1ˢᵗ) day of the month immediately following the month in which such additional advance or prepayment (as applicable) is made. All unpaid principal, interest, and other sums due hereunder shall be due and payable in full on the Maturity Date. All payments shall be payable in lawful money of the United States of America and shall be made by wire transfer to an account designated by Holder to Borrower from time to time, or at Holder's election, shall be made through automated clearing house (ACH) transfers from an account designated by Borrower. All payments will be applied first to any unpaid collection costs and late charges, then to accrued and unpaid interest, and any remaining amount to principal. Whenever any payment to be made hereunder shall be due on a day other than a business day, such payment shall be made on the next succeeding business day. The term "business day" as used herein shall mean any day other than a Saturday, Sunday, or public holiday.

5. Prepayment of the Indebtedness. If Borrower makes any prepayment of principal owing under this Note, in whole or in part, on or before the five-year anniversary of the Closing Date (as defined in the Loan Agreement), Borrower shall pay Holder a prepayment premium (the "Prepayment Premium") as follows: For any principal prepayment made on or prior to the one-year anniversary of the Closing Date, the Prepayment Premium shall equal ONE PERCENT (1.00%) of the amount prepaid. For any principal prepayment made after the one-year anniversary of the Closing Date, but on or before the two-year anniversary of the Closing Date, the Prepayment Premium shall equal NO PERCENT (0.00%) of the amount prepaid. For any principal prepayment made after the two-year anniversary of the Closing Date, but on or before the three-year anniversary of the Closing Date, the Prepayment Premium shall equal NO PERCENT (0.00%) of the amount prepaid. For any principal prepayment made after the three-year anniversary of the Closing Date, but on or before the four-year anniversary of the Closing Date, the

EXHIBIT A

Prepayment Premium shall equal NO PERCENT (0.00%) of the amount prepaid. For any principal prepayment made after the four-year anniversary of the Closing Date, but on or before the five-year anniversary of the Closing Date, the Prepayment Premium shall equal NO PERCENT (0.00%) of the amount prepaid. For purposes of this Section 5, the term "Prepayment" includes any payment or other reduction of the balance due under this Note, regardless of whether such payment or other reduction is: (a) is voluntary or involuntary; (b) is occasioned by Holder's acceleration of the Maturity Date or demand hereunder; (c) is made by Borrower or by a third party; (d) the product of Holder's receipt or collection of proceeds of the real property securing this Note, or any other collateral securing this Note, including insurance proceeds and condemnation awards; (e) the product of Holder's exercise of its right of set-off; or (f) made during a bankruptcy, reorganization or other proceeding, or is made pursuant to any plan of reorganization or liquidation.

6. Default. At the election of Holder, the Maturity Date may be accelerated, and all sums due hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (a) Any failure by Borrower to pay in full any sum due hereunder on or before the date such sum is due; (b) Any failure by Borrower to perform or observe any other term or provision herein; (c) Any default under the Security Instrument (as hereinafter defined), a default under the Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document, or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document; (d) Any failure by Borrower to satisfy a Condition Precedent set forth in the Loan Agreement; (e) Borrower shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or substantially all of its property and assets; (ii) make a general assignment for the benefit of its creditors; (iii) be dissolved or liquidated; (iv) become insolvent (as such term may be defined or interpreted under any applicable statute); (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vi) take any action for the purpose of effecting any of the foregoing. In addition to the rights and remedies provided herein, Holder may exercise any other right or remedy available under applicable law or under any other document, instrument, or agreement evidencing, securing, or otherwise relating to the indebtedness evidenced hereby, in accordance with the terms thereof, all of which rights and remedies shall be cumulative. The payment and acceptance of any sum shall not be considered a waiver of such right of election. Borrower hereby agrees to indemnify, defend, and hold Holder harmless from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder in connection with, or as a result of, any Event of Default.

7. Default Rate. Beginning on the earlier of (i) the Maturity Date; (ii) the date on which an Event of Default occurs; or (iii) the date on which Holder accelerates the entire amount of the indebtedness due hereunder, without notice or any required action by Holder; the Loan will accrue interest at a rate (the "Default Rate") equal to the lesser of (i) Twenty-Six Percent (26%) per annum; or (ii) the Maximum Rate (as hereinafter defined)). Following an Event of Default, interest will continue to accrue at the Default Rate until such Event of Default, and any other Events of Default are cured. In the event Holder, obtains a judgment on this promissory note the interest will continue to accrue at the Default Rate after judgment until all sums are paid in full. Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid, or agreed to be paid, hereunder exceed the highest lawful rate permitted under any applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the aggregate amounts paid on this promissory note (as may be amended, restated, or modified from time to time, the "Note"'), should cause the effective interest rate of the Note to exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to be the result of a mistake on the part of both Borrower and Holder. The party that receives such excess payments shall promptly credit such excess (to the extent such payments in excess of the Maximum Rate) against the unpaid principal balance hereof. Any portion of such excess payments not capable of being so credited will be refunded to Borrower.

8. Late Charges. If any payment of interest is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of (i) ten percent (10%) of such overdue payment; or (ii) the maximum amount permitted by applicable law shall automatically become due to the Holder of this Note. If any payment of principal is not paid

EXHIBIT A

within ten (10) days of the date such payment is due, a late charge equal to the lesser of: (i) three percent (3%) of such overdue payment; or (ii) the maximum amount permitted by applicable law; shall automatically become due to the Holder of this Note. Said late charges do not constitute interest and shall constitute compensation to Holder of this Note for collection administration costs incurred hereunder. In addition, if any payment of principal or interest is not paid when due, the rate of interest per annum on the outstanding Loan shall increase to the Default Rate and such rate increase shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to Holder by reason of any default or Event of Default.

9. Security and Guaranty. The obligations hereunder, including the obligation to make full and timely payments of principal and interest, are secured by, among other things, the following: the Loan Agreement; a certain Commercial Guaranty (the "Guaranty") executed by Adonis Lockett (the "Guarantor"); a certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Security Instrument") granted by ALLEO HOLDINGS CORPORATION, in favor of RCN Capital, LLC, encumbering the real property and improvements at 1306 Elby Street, Irving, TX 75061.

10. Reservation of Holder's Rights. Notwithstanding any course of dealing or course of performance: (i) neither failure nor delay on the part of Holder to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (ii) no notice to or demand upon Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Holder to take further action without notice or demand; and (iii) no amendment, modification, rescission, waiver, or release of any provision of this Note shall be effective unless the same shall be in writing and signed by Holder.

11. Costs and Expenses. Borrower will pay to Holder all costs and expenses of collection hereof (including reasonable attorneys' fees).

12. Completion of Instrument; Reproduction Admissible; Counterparts. Borrower authorizes Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note shall be admissible in evidence with the same effect as the original Note in any judicial or other proceeding, whether or not the original is in existence. This Note may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Note without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Note identical in form hereto but having attached to it one or more additional signature pages.

13. WAIVER OF RIGHTS/DELAY; WAIVER OF JURY TRIAL. BORROWER AND EACH SURETY, ENDORSER, AND GURANTOR HEREOF ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THE RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, and further waive diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment in this Note may be changed and extended as provided in the Loan Agreement, without impairing their liability thereon, and further consent to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of Holder in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. In the interest of a speedy resolution of a lawsuit which may arise hereunder, Borrower and each accommodation maker and endorser under this Note waive a trial by jury in any action with respect to this Note and as to any issues arising relating to this Note. Any funds received by Holder after maturity, whether by acceleration or otherwise, shall be applied to amounts then due and Holder's acceptance of any such funds shall not be construed as a waiver of Borrower's default.

EXHIBIT A

14. Governing Law. This Note shall be governed by, and shall be construed and interpreted in accordance with, the laws of the state of Connecticut.

15. Binding Effect. The terms and provisions of this Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

[Remainder of page intentionally left blank]

EXHIBIT A

IN WITNESS WHEREOF, the undersigned have executed this Commercial Promissory Note on 9-17 _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ , 2024.

ALLEO HOLDINGS CORPORATION

By: _____

Name: Adonis Lockett

Title: President


STATE OF Texas _ _ _ _ _ _ _ _ _        )
                                          )ss. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
COUNTY OF Tarrant _ _ _ _ _            )

I certify that on _ _ _ _ Sept 17 _ _ _ _ _ _ _ _ _ , 2024, Adonis Lockett came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as President of ALLEO HOLDINGS CORPORATION (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

_____
Notary Public

KRISTIN EMMONS BLAY
Notary Public, State of Texas
Comm. Expires 06-20-2026
Notary ID 12236118

EXHIBIT A

## ALLONGE TO COMMERCIAL PROMISSORY NOTE

This Allonge to Commercial Promissory Note is to be affixed to and made a part of that certain Commercial Promissory Note in the stated principal amount of **Three Hundred Eighty-Four Thousand Dollars and No Cents ($384,000.00)**, executed by **ALLEO HOLDINGS CORPORATION**, a Texas corporation with a principal place of business of 2342 King Richard Dr, Grand Prairie, TX 75050 and made to the order of **RCN Capital, LLC**, a Connecticut limited liability company, having a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074. Note dated September 17, 2024.

Pay to the order of _____, WITHOUT RECOURSE OR WARRANTY.

Dated as of September 24, 2024.

**RCN Capital, LLC**

By: _C/L_____
Cecelia Ritskowitz, Authorized Signer

STATE OF CONNECTICUT )
)ss. South Windsor
COUNTY OF HARTFORD )

I certify that on September 24, 2024, **Cecelia Ritskowitz** came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Authorized Signer of RCN Capital, LLC, a Connecticut limited liability company (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

_____
Notary Public



CASSANDRA MALDONADO
Notary Public of Connecticut
My Commission Expires 09/30/2028

EXHIBIT A

## Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:** 202400188239

eRecording - Real Property

---

Recorded On: September 18, 2024 09:25 AM                Number of Pages: 19

---

### " Examined and Charged as Follows: "

Total Recording: $93.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                   **Record and Return To:**

Document Number:     202400188239                       Simplifile
Receipt Number:      20240917000976
Recorded Date/Time:  September 18, 2024 09:25 AM
User:                Hilga R
Station:             CC132.dal.ccdc

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

EXHIBIT A

CERTIFIED TO BE A TRUE &
EXACT COPY OF ORIGINAL

INTERNAL FILENAME: ████ MTG.pdf

## NOTICE OF CONFIDENTIALITY RIGHTS:
**IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE
ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY
INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY
BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR
SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE
NUMBER.**

…..................................... Space Above Line for Recorder's Use …..................................

**DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND
FIXTURE FILING**

PARCEL ID:                    32-30150-006-003-0000

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | **SOURCEPOINT<br>ATTN: ELITE COMMERCIAL<br>CLOSINGS LLC / FINAL<br>DOCUMENTS<br>2330 COMMERCE PARK DRIVE,<br>SUITE #2<br>PALM BAY, FL 32905** |

MIN: ████████

Lender Loan Number: ██████

**Page 1 of 18**

EXHIBIT A

## DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (the "Instrument") is made by **ALLEO HOLDINGS CORPORATION** (the "Grantor"), a Texas corporation with a principal place of business at 2342 King Richard Dr, Grand Prairie, TX 75050 to **Angela DiTommaso, as trustee** (the "Trustee"), an individual with an address of PO Box 3801, Vernon, CT 06066, for the benefit of **Mortgage Electronic Registration Systems, Inc.** ("MERS"), a Delaware corporation, having an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, as Grantee, acting solely as a nominee for **RCN Capital, LLC,** a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, its successors and assigns ("Lender").

### RECITAL

Grantor is indebted to Lender in the principal amount of **Three Hundred Eighty-Four Thousand Dollars and No Cents ($384,000.00),** as evidenced by Grantor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Lender, executed and delivered contemporaneously with this Instrument, and maturing on October 1, 2054 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Grantor and Lender executed and delivered contemporaneously herewith.

### AGREEMENT

TO SECURE TO Lender the full and prompt payment and performance of each and all of Grantor's obligations under the Note, and the performance of the covenants and agreements of Grantor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Grantor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Grantor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property (collectively, the "Premises"):

A   The real property located in Dallas County, Texas, at **1306 Elby Street, Irving, TX 75061,** as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Grantor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such

**Page 2 of 18**

EXHIBIT A

real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

B    All buildings, structures, improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions (the "Improvements");

C    All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Grantor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the state of Texas, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D    All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Grantor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E    All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Grantor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F    All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Grantor is a cooperative housing corporation), and all

**Page 3 of 18**

EXHIBIT A

modifications, extensions or renewals (all of which are herein sometimes referred to together as the "<u>Leases</u>");

G    All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (i) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), and (F); (ii) any sale, lease or other disposition thereof; (iii) each policy of insurance relating thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H    All other interests of every kind and character, and proceeds thereof, which Grantor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Grantor does hereby represent and warrant that Grantor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "<u>Permitted Encumbrances</u>") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Lender contemporaneously with the execution and recordation of this Instrument and insuring Lender's interest in the Premises. Grantor does hereby covenant and agree that Grantor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Grantor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Lender and any other Person authorized by Lender shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Grantor, as debtors, and Lender, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the state of Texas (the "<u>UCC</u>"), for the purpose of securing Grantor's obligations under this Instrument and to further secure Grantor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "<u>UCC Collateral</u>"), and by this Instrument, Grantor hereby grants to Lender a security interest in the Collateral. To the extent necessary under applicable law, Grantor hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Lender will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or

**Page 4 of 18**

EXHIBIT A

existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument also constitutes a financing statement with respect to any part of the Premises that is or may become a fixture, if permitted by applicable law.

3. Taxes and Other Charges. Grantor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Lender's request, Grantor shall deliver to Lender within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Lender.

4. Insurance. Grantor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Grantor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrances.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Lender, be and become immediately due and payable in full, subject to applicable law, and Lender shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Lender in Possession. (A) As part of the consideration for the Indebtedness, Grantor absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Grantor to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorizes and empower Lender to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Lender, Grantor agrees to execute and deliver such further assignments as Lender may from time to time require. Grantor and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the state of Texas, then the Rents will be included as a part of the Premises and it is the intention of Grantor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Lender,

**Page 5 of 18**

EXHIBIT A

which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default, Lender hereby grants to Grantor a revocable license to collect and receive all the Rents, to hold all the Rents in trust for the benefit of Lender and to apply all the Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Grantor free and clear of, and released from, Lender's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Grantor authorizes Lender to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Lender. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Premises directly, or by a receiver, Grantor's license to collect the Rents will automatically terminate and Lender will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Grantor will pay to Lender upon demand all the Rents to which Lender is entitled. At any time on or after the date of Lender's demand for the Rents, Lender may give, and Grantor hereby irrevocably authorizes Lender to give, notice to all tenants of the Premises instructing them to pay all Rents to Lender. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to* Grantor *any amounts which are actually paid to* Lender *in response to such a notice.* Any such notice by Lender will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Grantor will not interfere with and will cooperate with Lender's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Lender will have each of the following rights and may take any of the following actions: (i) Lender may, regardless of the adequacy of Lender's security or the solvency of Grantor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to <u>Section 7(A)</u> of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Lender, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Grantor's solvency and without the necessity of giving prior notice (oral or written) to Grantor, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Grantor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. (iii) If Grantor is a housing cooperative corporation or association, Grantor hereby agrees that if a receiver is appointed,

**Page 6 of 18**

EXHIBIT A

the order appointing the receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Grantor and must be paid out of maintenance charges payable by Grantor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Lender or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises. (v) Immediately upon appointment of a receiver or immediately upon Lender's entering upon and taking possession and control of the Premises, Grantor will surrender possession of the Premises to Lender or the receiver, as the case may be, and will deliver to Lender or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Lender takes possession and control of the Premises, then Lender may exclude Grantor and its representatives from the Premises. Grantor acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 7 will not be construed to make Lender a Lender-in-possession of the Premises so long as Lender has not itself entered into actual possession of the Land and Improvements. (D) If Lender enters the Premises, Lender will be liable to account only to Grantor and only for those Rents actually received. Except to the extent of Lender's gross negligence or willful misconduct, Lender will not be liable to the Borrower, anyone claiming under or through Grantor or anyone having an interest in the Premises, by reason of any act or omission of Lender under Section 7(C) of this Instrument, and Grantor hereby releases and discharges Lender from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Lender for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Lender for such purposes will become an additional part of the Indebtedness as provided in Section 9 of this Instrument. (F) Any entering upon and taking of control of the Premises by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument. (F) This Section 7 will not be construed to require a *pro tanto* or other reduction of the Indebtedness resulting from the assignment of Rents. If the provisions of this Section 7 and the preceding sentence cause the assignment of Rents in this Section 7 to be deemed to be an assignment for additional security only, Lender will be entitled to all rights, benefits and remedies attendant to such collateral assignment. The assignment of Rents contained in this Section 7 of this Instrument will terminate upon the release of this Instrument. (G) Unless expressly excluded, the Premises will include the Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Trustor will pay such Rents to the purchaser at such sale.

8. Application of Payments. If at any time Lender receives, from Grantor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in its discretion. Neither Lender's acceptance of an amount that is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid

**Page 7 of 18**

EXHIBIT A

amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Grantor's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

9. Protection of Lender's Security; Instrument Secures Future Advances. If Grantor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Lender's security, or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender, at Lender's option may make such appearances, file such documents, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Grantor and to protect Lender's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Grantor has failed to pay under this Instrument, the Loan Agreement, or any of the Loan Documents; (iv) perform any of Grantor's obligations under the Loan Agreement; (v) make advances to pay, satisfy or discharge any obligation of the Grantor for the payment of money that is secured by a lien on the Premises. Any amounts disbursed by Lender under this <u>Section 9</u> or under any other provision of this Instrument that treats such disbursement as being made under this <u>Section 9</u>, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this <u>Section 9</u> will require Lender to incur any expense or take any action. The provisions of this <u>Section 9</u>, including the obligation to indemnify Lender, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Lender's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "<u>Hazardous Materials Law</u>" and "<u>Hazardous Materials Laws</u>" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Grantor or to the Premises. Hazardous Materials Laws include the <u>Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq.</u>, the <u>Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, et seq.</u>, the <u>Toxic Substance Control Act, 15 U.S.C. Section 2601, et seq.</u>, the <u>Clean Water Act, 33 U.S.C. Section 1251, et seq.</u>, and the <u>Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 et seq.</u>, and their state analogs. As used herein, the term "<u>Hazardous Materials</u>" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are prohibited by any governmental authority; any substance that requires special handling and any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant,"

EXHIBIT A

"contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

10. **Events of Default.** An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Lender.

11. **Remedies Cumulative.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Lender's exercise of any particular right or remedy will not in any way prevent Lender from exercising any other right or remedy available to Lender. Lender may exercise any such remedies from time to time and as often as Lender chooses.

12. **Waiver of Statute of Limitations, Offsets, and Counterclaims.** Grantor waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document. Grantor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Lender or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Lender to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Grantor is obligated to make under any of the Loan Documents.

13. **Waiver of Marshalling.** Notwithstanding the existence of any other security interests in the Premises held by Lender or by any other party, Lender will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Lender will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Grantor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

14. **Further Assurances.** Grantor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Loan Documents.

15. **Governing Law; Consent to Jurisdiction and Venue.** This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the state of Texas. Notwithstanding the foregoing, the law of the state of Connecticut

Page 9 of 18

EXHIBIT A

shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state of Texas). Nothing in this Section 15 is intended to limit Lender's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

16. **Notices.** All notices given by Grantor or Lender in connection with this Instrument must be in writing. Any notice to Grantor in connection with this Instrument shall be deemed to have been given to Grantor when mailed by first class mail or when actually delivered to Grantor's notice address if sent by other means. Notice to any one Co-Borrower shall constitute notice to all Co-Borrowers unless applicable law expressly requires otherwise. The notice address shall be the address of the Premises unless Grantor has designated a substitute notice address by notice to Lender. Grantor shall promptly notify Lender of Grantor's change of address. If Lender specifies a procedure for reporting Grantor's change of address, then Grantor shall only report a change of address through that specified procedure. There may be only one designated notice address under this Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Grantor. Grantor acknowledge that any notice Grantor provides to Lender must also be provided to MERS as Nominee for Lender until MERS' Nominee interest is terminated. Any notice provided by Grantor in connection with this Instrument will not be deemed to have been given to MERS until actually received by MERS. Any notice in connection with this Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Instrument is also required under applicable law, the applicable law requirement will satisfy the corresponding requirement under this Instrument.

17. **Successors and Assigns.** This Instrument will bind the respective successors and assigns of Grantor and Lender, and the rights granted by this Instrument will inure to Lender's successors and assigns.

19. **Joint and Several Liability.** If more than one party signs this Instrument as Grantor, the obligations of such Persons will be joint and several.

19. **Relationship of Parties; No Third-Party Beneficiary.** The relationship between Lender and Grantor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Lender and Grantor. Nothing contained in this Instrument will constitute Lender as a joint venturer, partner or agent of Grantor, or render Lender liable for any debts, obligations, acts, omissions, representations or contracts of Grantor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

20. **Severability; Amendments; Construction** The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the

**Page 10 of 18**

EXHIBIT A

party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

21. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 9 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Lender at Grantor's request, and Lender will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

22. Confession of Judgment in Ejectment. To the extent permissible under the laws of the state of Texas, at any time after an Event of Default, regardless of whether Lender has asserted any other right or exercised any other remedy under this Instrument or any of the other Loan Documents, it shall be lawful for any attorney of any court to confess judgment in ejectment against Grantor and all Persons claiming under Grantor for the recovery by Lender of possession of all or any part of the Premises, for which this Instrument shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Grantor, Lender shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

23. Acceleration; Remedies. (A) At any time during the existence of an Event of Default, Lender, at its option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the POWER OF SALE and any other remedies permitted by Texas law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Trustor acknowledges that the POWER OF SALE granted in this Instrument may be exercised by Lender without prior judicial hearing. Lender will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs, costs of documentary evidence, abstracts, and title reports. (B) If Lender invokes the POWER OF

EXHIBIT A

SALE, Lender may, by and through the Trustee, or otherwise, sell or offer for sale the Premises in such portions, order and parcels as Lender may determine, with or without having first taken possession of the Premises, to the highest bidder for cash at public auction. Such sale will be made at the courthouse door of the county in which all or any part of the Land to be sold is situated (whether the parts or parcel, if any, situated in different counties are contiguous or not, and without the necessity of having any Accessories present at such sale) on the first (1ˢᵗ) Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m., after advertising the time, place, and terms of sale and that portion of the Premises to be sold by posting or causing to be posted written or printed notice of sale at least twenty-one (21) days before the date of the sale at the courthouse door of the county in which the sale is to be made and at the courthouse door of any other county in which a portion of the Land may be situated, and by filing such notice with the County Clerk of the county in which all or a portion of the Land may be situated, which notice may be posted and filed by the Trustee acting, or by any Person acting for the Trustee, and Lender has, at least twenty-one (21) days before the date of the sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness in accordance with Lender's records by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by Lender's records, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any Person having knowledge of the facts to the effect that such service was completed will be *prima facie* evidence of the fact of service. (C) The Trustee will deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Premises so sold in fee simple with covenants of general warranty. Trustor covenants and agrees to defend generally the purchaser's title to the Premises against all claims and demands. The recitals in the trustee's deed will be *prima facie* evidence of the truth of the statements contained in those recitals. Trustee will apply the proceeds of the sale in the following order: (i) To all costs and expenses of the sale, including Trustee's fees not to exceed five percent (5%) of the gross sales price, attorneys' fees and costs and costs of title evidence; (ii) To the Indebtedness in such order as Lender, in its discretion, directs; and (iii) The excess, if any, to the Person or Persons legally entitled thereto. (D) If all or any part of the Premises are sold pursuant to this Section 24, Trustor will be divested of any and all interest and claim to the Premises, including any interest or claim to all insurance policies, utility deposits, bonds, loan commitments and other intangible property included as a part of the Premises. Additionally, after a sale of all or any part of the Land, Improvements, Accessories, and personalty, Trustor will be considered a tenant at sufferance of the purchaser of the same, and the purchaser will be entitled to immediate possession of such property. If Trustor will fail to vacate the Premises immediately, the purchaser may and will have the right, without further notice to Trustor, to go into any justice court in any precinct or county in which the Premises are located and file an action in forcible entry and detainer, which action will lie against Trustor, or its assigns or legal representatives, as a tenant at sufferance. This remedy is cumulative of any and all remedies the purchaser may have under this Instrument or otherwise. I In the event an interest in any of the Premises are foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Trustor agrees as follows: notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Trustor agrees that Lender will be entitled to seek a deficiency judgment from Trustor and any other party obligated on the Note equal to the difference between the

**Page 12 of 18**

EXHIBIT A

amount owing on the Note and the amount for which the Premises was sold pursuant to judicial or nonjudicial foreclosure sale. Trustor expressly recognizes that this Section 24I constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Trustor and other Persons against whom a recovery of deficiencies is sought or guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Premises as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Trustor further acknowledges and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Premises for purposes of calculating deficiencies owed by Trustor, any guarantor of the Note, and others against whom recovery of a deficiency is sought. Alternatively, in the event the waiver provided for in this Section 24I is determined by a court of competent jurisdiction to be unenforceable, in any action for a deficiency after a foreclosure under this Instrument, if any Person against whom recovery is sought requests the court in which the action is pending to determine the fair market value of the Premises, as of the date of the foreclosure sale, the following will be the basis of the court's determination of fair market value: (i) The Premises will be valued "as is" and in its condition as of the date of foreclosure, and no assumption of increased value because of post-foreclosure repairs, refurbishment, restorations or improvements will be made. (ii) Any adverse effect on the marketability of title because of the foreclosure or because of any other title condition not existing as of the date of this Instrument will be considered. (iii) The valuation of the Premises will be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Premises for cash within a six (6) month period after foreclosure. (iv) The valuation of the Premises will be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Premises for cash within a six (6) month period after foreclosure. (v) The gross valuation of the Premises as of the date of foreclosure will be further discounted and reduced by reasonable estimated costs of disposition, including brokerage commissions, title policy premiums, environmental assessment and clean-up costs, tax and assessment, prorations, costs to comply with legal requirements and attorneys' fees and costs. (vi) Expert opinion testimony will be considered only from a licensed appraiser certified by the state of Texas and, to the extent permitted under Texas law, a member of the Appraisal Institute, having at least five (5) years' experience in appraising property similar to the Premises in the county where the Premises are located, and who has conducted and prepared a complete written appraisal of the Premises taking into considerations the factors set forth in this Instrument; no expert opinion testimony will be considered without such written appraisal. (vii) Evidence of comparable sales will be considered only if also included in the expert opinion testimony and written appraisal referred to in Section 24I(vi) of this Instrument, above. (viii) An affidavit executed by Lender to the effect that the foreclosure bid accepted by the Trustee was equal to or greater than the value of the Premises determined by Lender based upon the factors and methods set forth in Sections 24I(i) through (vii) of this Instrument above before the foreclosure will constitute *prima facie* evidence that the foreclosure bid was equal to or greater than the fair market value of the Premises on the foreclosure date. (F) Lender may, at its option, comply with these provisions in the manner permitted or required by Title 5, Section 51.002 of the Texas Property Code (relating to the sale of real estate) or by Chapter 9 of the Texas Business and Commerce Code (relating to the sale of collateral after default by a debtor), as those titles and chapters now exist or may be amended or succeeded in the future, or by any other present

**Page 13 of 18**

EXHIBIT A

or future articles or enactments relating to same subject. Unless expressly excluded, the Premises will include the Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Trustor will pay such Rents to the purchaser at such sale. (G) At any such sale, all of the following will be true: (i) Whether made under the power contained in this Instrument, Section 51.002 of the Texas Property Code, Chapter 9 of the Texas Business and Commerce Code, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it will not be necessary for the Trustee to have physically present, or to have constructive possession of, the Premises. Trustor will deliver to the Trustee any portion of the Premises not actually or constructively possessed by the Trustee immediately upon demand by the Trustee and the title to and right of possession of any such property will pass to the purchaser as completely as if the property had been actually present and delivered to the purchaser at the sale. (ii) Each instrument of conveyance executed by the Trustee will contain a general warranty of title, binding upon Trustor. (iii) The recitals contained in any instrument of conveyance made by the Trustee will conclusively establish the truth and accuracy of the matters recited in the Instrument, including nonpayment of the Indebtedness and the advertisement and conduct of the sale in the manner provided in this Instrument and otherwise by law and the appointment of any successor Trustee. (iv) All prerequisites to the validity of the sale will be conclusively presumed to have been satisfied. (v) The receipt of the Trustee or of such other party or officer making the sale will be sufficient to discharge to the purchaser or purchasers for such purchasers' purchase money, and no such purchaser or purchasers, or such purchasers' assigns or personal representatives, will thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication of such purchase money. (vi) To the fullest extent permitted by law, Trustor will be completely and irrevocably divested of all of Trustor's right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale will be a perpetual bar to any claim to all or any part of the property sold, both at law and in equity, against Trustor and against any Person claiming by, through or under Trustor. (vii) To the extent and under such circumstances as are permitted by law, Lender may be a purchaser at any such sale.

24. **Release.** Upon payment of the Indebtedness, Lender will release this Instrument. Trustor will pay Lender's reasonable costs incurred in releasing this Instrument.

25. **Trustee.** (A) The Trustee may resign by giving of notice of such resignation in writing to Lender. If the Trustee will die, resign or become disqualified from acting under this Instrument or will fail or refuse to act in accordance with this Instrument when requested by Lender or if for any reason and without cause Lender will prefer to appoint a substitute trustee to act instead of the original Trustee named in this Instrument or any prior successor or substitute trustee, Lender will have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who will succeed to all the estate, rights, powers and duties of the original Trustee named in this Instrument. Such appointment may be executed by an authorized officer, agent or attorney-in-fact of Lender (whether acting pursuant to a power of attorney or otherwise), and such appointment will be conclusively presumed to be executed with authority and will be valid and sufficient without proof of any action by Lender. (B) Any successor trustee appointed pursuant to this Section 26 will, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of the predecessor Trustee with like effect as if originally named as the Trustee in this Instrument;

**Page 14 of 18**

EXHIBIT A

but, nevertheless, upon the written request of Lender or such successor trustee, the trustee ceasing to act will execute and deliver an instrument transferring to such successor trustee, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and will duly assign, transfer and deliver any of the property and monies held by the Trustee ceasing to act to the successor trustee. (C) The Trustee may authorize one or more parties to act on the Trustee's behalf to perform the ministerial functions required of the Trustee under this Instrument, including the transmittal and posting of any notices.

26. **Vendor's Lien.** To the extent a vendor's lien is retained in that certain deed conveying the Premises to Trustor and dated on or about the date of this Instrument, such vendor's lien has been assigned to Lender, the Note is primarily secured by said vendor's lien, and this Instrument is additional security therefor.

27. **No Fiduciary Duty.** Lender owes no fiduciary or other special duty to Trustor.

28. **Fixture Filing.** This Instrument is also a fixture filing under the <u>Uniform Commercial Code of Texas</u>.

29. **Loan Charges.** Trustor and Lender intend at all times to comply with the laws of the state of Texas governing the maximum rate or amount of interest payable on or in connection with the Indebtedness (or applicable United States Federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount payable under the Note, this Instrument or any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or if acceleration of the maturity of the Indebtedness, or if any prepayment by Trustor results in Trustor having paid any interest in excess of that permitted by any applicable law, then Trustor and Lender expressly intend that all excess amounts collected by Lender will be applied to reduce the unpaid principal balance of the Indebtedness (or, if the Indebtedness has been or would thereby be paid in full, will be refunded to Trustor), and the provisions of the Note, this Instrument and the other Loan Documents immediately will be deemed reformed and the amounts thereafter collectible under the Loan Documents will be deemed reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. The right to accelerate the maturity of the Indebtedness does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness will, to the extent permitted by any applicable law, be amortized, prorated, allocated and spread throughout the full term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in the Note, this Instrument or any other Loan Document that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of the Indebtedness, the total amount of interest that Trustor shall be obligated to pay and Lender is entitled to receive with respect to the Indebtedness will not exceed the amount calculated on a simple (i.e., noncompounded) interest basis at the maximum rate on principal amounts actually disbursed to or for the

**Page 15 of 18**

EXHIBIT A

account of Trustor, including all current and prior advances and any advances made pursuant to the Instrument or any other Loan Document (such as for the payment of Impositions and similar expenses or costs).

**30. ENTIRE AGREEMENT. THIS INSTRUMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

31. Notice of Additional Provisions Regarding Insurance. Any terms to the contrary contained in this Instrument notwithstanding, the following requirements are hereby imposed pursuant to Section 307.052 of the Texas Finance Code: **(A) TRUSTOR IS REQUIRED TO: (i) KEEP THE PREMISES INSURED AGAINST DAMAGE IN AN AMOUNT EQUAL TO THE INDEBTEDNESS; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER, AND (iii) NAME Lender AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF LOSS. (B) IF TRUSTOR SHOULD FAIL TO COMPLY WITH SECTION 32(A) ABOVE, Lender MAY, BUT WILL NOT BE OBLIGATED TO, OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF TRUSTOR AT TRUSTOR'S EXPENSE.**

*[Remainder of page intentionally left blank]*

Page 16 of 18

EXHIBIT A

IN WITNESS WHEREOF, the undersigned has signed and delivered this Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing or has caused said instrument to be signed and delivered by its duly authorized representative on _ _ Sept _ _ 17 _ _ _ _ _ _ _
_ _ _ _ _ _, 2024.

### ALLEO HOLDINGS CORPORATION

Witness: _Tony Thitakham_

By: _____
Name: Adonis Lockett
Title: President

Witness: _Unuivy vincon_

STATE OF _Texas_____ )
)ss. _____
COUNTY OF _Tarrant_____ )

I certify that on _Sept_ 17_____, 2024, Adonis Lockett came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as President of ALLEO HOLDINGS CORPORATION (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

_____
Notary Public

KRISTIN EMMONS BLAY
Notary Public, State of Texas
Comm. Expires 06-20-2026
Notary ID 12236118

EXHIBIT A

**SCHEDULE 1**
**PROPERTY DESCRIPTION**

The South 70 feet of Lot 3, in Block F of FIRST INSTALLMENT OF MEADOWBROOK ESTATES NO. 9, an Addition to the City of Irving, Dallas County, Texas, according to the map or plat thereof recorded in Volume 42, Page 151 of the Plat Records of Dallas County, Texas.

**Page 18 of 18**

EXHIBIT A

Recording Requested By:
Title Clearing and Escrow

When Recorded Return To:

Assignments and Lien Release
Title Clearing and Escrow
1601 LBJ Freeway Suite 150
Farmers Branch, TX 75234

---

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Dallas, Texas
Fay Servicing#: ▆▆▆▆ "ALLEO HOLDINGS CORPORATION" TCE-435667-TX

MIN #: ▆▆▆▆▆▆▆▆ MERS Corporate Phone Number: 1-888-679-6377

Date of Assignment: September 24th, 2025
Assignor: Mortgage Electronic Registration Systems, Inc., as nominee for RCN CAPITAL, LLC., its successors and assigns

 at P.O. Box 2026, Flint, MI 48501-2026
Assignee: Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for Ibis Holdings A Trust at 500 DELAWARE AVE, WILMINGTON, DE 19801

Executed By: ALLEO HOLDINGS CORPORATION To: Mortgage Electronic Registration Systems, Inc., as nominee for RCN CAPITAL, LLC., its successors and assigns

Dated: 09-17-2024 Recorded: *9-18-2024* as Instrument No. *202400188239*, Book/Reel/Liber ___*N/A*___. Page/Folio *N/A* In the County of Dallas, State of Texas.

Property Address: 1306 ELBY ST, IRVING, TX 75061

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $384,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.    IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

Mortgage Electronic Registration Systems, Inc., as nominee for RCN CAPITAL, LLC., its successors and assigns

On September 24th, 2025

By: _____
John Rodriguez, Assistant Secretary

EXHIBIT A

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On September 24th, 2025, before me, Amanda McCabe, a Notary Public in and for Dallas in the State of Texas, personally appeared John Rodriguez, Assistant Secretary of Mortgage Electronic Registration Systems, Inc., as nominee for RCN CAPITAL, LLC., its successors and assigns

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Amanda McCabe
Notary Expires: 5/27/2029   #135516804

Amanda McCabe
My Commission Expires
5/27/2029
Notary ID 135516804

EXHIBIT A

# Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:**  202500202294

eRecording – Real Property

Recorded On: September 25, 2025 08:54 AM                    Number of Pages: 3

---

## " Examined and Charged as Follows: "

Total Recording: $29.00

---

********** **THIS PAGE IS PART OF THE INSTRUMENT** **********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                        **Record and Return To:**

Document Number:     202500202294                            Simplifile

Receipt Number:      20250925000029

Recorded Date/Time:  September 25, 2025 08:54 AM

User:                Thelma B

Station:             Cc133

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

EXHIBIT A

Docusign Envelope ID: ███████

# EXTENSION AND MODIFICATION AGREEMENT

**THIS EXTENSION AND MODIFICATION AGREEMENT** ("**Agreement**"), is made as of _____8/16/2024_____, by and between **ALLEO HOLDINGS CORPORATION**, as borrower ("**Borrower**"), a Texas corporation with a principal place of business at 1200 W Walnut Hill Ln, Ste 3950, Irving, TX 75038; and **Toorak Capital Partners, LLC**, as lender ("**Lender**"), a Delaware limited liability company, having a principal place of business of 15 Maple St., Second Floor West, Summit, NJ 07901.

## RECITALS

**WHEREAS,** RCN Capital, LLC made a commercial loan (the "**Loan**") in the original principal amount of **Two Hundred Sixty-Nine Thousand Dollars and No Cents ($269,000.00)**, upon the terms and subject to the conditions set forth in a certain **Commercial Loan and Security Agreement** dated October 17, 2022 (the "**Loan Agreement**"), and evidenced by a certain **Commercial Promissory Note** of even date therewith (the "**Note**"), in the principal amount of **Two Hundred Sixty-Nine Thousand Dollars and No Cents ($269,000.00)**, made by **Borrower**, payable to RCN Capital, LLC and its assigns;

**WHEREAS**, the obligations under the **Loan** are secured by, among other things, the following security instruments (each, a "**Security Instrument**"), encumbering certain real property and improvements (the "**Secured Property**") set forth below, and more particularly described therein:

A certain **Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing** granted by ALLEO HOLDINGS CORPORATION in favor of RCN Capital, LLC, encumbering the real property and improvements located at **1306 Elby Street, Irving, TX 75061**; and

**WHEREAS**, the **Note**, the **Security Instrument**, the **Loan Agreement**, and all other documents evidencing, securing, or executed in connection with, the **Loan** are hereinafter referred to collectively as the "**Loan Documents**"); and

**WHEREAS**, under the terms of the **Loan**, the date upon which all unpaid principal, accrued interest thereon, and other fees or charges (collectively, the "**Indebtedness**") became (or will become) due and payable is **July 1, 2024**; and

**WHEREAS**, RCN Capital, LLC granted, conveyed, assigned, and transferred to **Lender** all of its right, title, and interest under the **Loan** and the **Loan Documents**; and

**WHEREAS**, **Borrower** has requested, and **Lender** has agreed, to modify the terms of the **Loan**.

**NOW**, **Borrower** and **Lender** therefore agree as follows:

## ARTICLE I: MODIFICATION OF TERMS

**1.01 Extension Fee**. **Borrower** will pay to **Lender** a fee (the "**Extension Fee**") in the amount of **$5,320.00**, in consideration for **Lender's** agreements contained herein, including without limitation, **Lender's** agreement to modify the date on which the **Indebtedness** becomes due and payable in full. This **Extension Fee** is to be paid as of the earlier of (i) the **Maturity Date**, or (ii) the time the **Loan** is paid in full.

EXHIBIT A

**1.02 Legal Fee**. **Borrower** will pay to **Lender** a fee (the "**Legal Fee**") in the amount of **$650.00**, in consideration for **Lender's** work in preparing this **Agreement**. This **Agreement** is expressly conditioned on payment and receipt of the **Legal Fee**.

**1.03 Administration Fee**. **Borrower** will pay to **Lender** a fee (the "**Administration Fee**") in the amount of **$350.00**, in consideration for **Lender's** servicer's work in preparing this **Agreement**. This **Administration Fee** is to be paid as of the earlier of (i) the **Maturity Date**, or (ii) the time the **Loan** is paid in full.

**1.04 Extension of Maturity Date**. Upon the **Lender's** receipt of the **Extension Fee**, provided no **Event of Default** (as defined in the **Loan Agreement**), or any event that, with notice or passage of time, or both, would constitute an **Event of Default**, has occurred and is continuing, or is not cured by this **Agreement**, the date on which all principal, interest, and other sums due under the **Note** shall be due and payable on **January 1, 2025** (hereinafter, the "**Maturity Date**").

**1.05 Interest Rate Change**. Intentionally left blank.

**1.06 BPO Fee**. **Borrower** will pay to **Lender** a fee (the "**BPO Fee**") in the amount of **$95.00**, in consideration for **Lender's** work in preparing, ordering, and reviewing a broker price opinion of the **Secured Property** in order to determine eligibility for this **Agreement**. This **BPO Fee** is to be paid as of the earlier of (i) the **Maturity Date**, or (ii) the time the **Loan** is paid in full.

## ARTICLE II: STANDARD TERMS

**2.01** The **Loan Documents** are hereby modified in such a manner to be consistent with all modifications and agreements contained herein. Except as specifically modified by the terms of this **Agreement**, the **Loan Documents** shall not be affected by this **Agreement** and each shall remain in full force and effect. Nothing herein contained shall be construed to impair the **Lender's** security under the **Loan Documents** nor to limit or impair any rights or powers that the **Lender** now enjoys or may hereafter enjoy under the **Loan Documents** for recovery of the indebtedness secured thereby.

**2.02** The **Loan Documents** are hereby ratified and confirmed by **Borrower** and **Lender** and every provision, covenant, warranty, representation, condition, obligation, right, and power contained in and under the **Loan Documents** as amended and modified, shall continue in full force and effect, affected by this **Agreement** only to the extent of the amendments and modifications set forth above. Without limiting the generality of the foregoing, the **Borrower** and the **Lender** hereby ratify and confirm that as of the date hereof, or as a consequence of this **Agreement**, there exists no **Event of Default** and no circumstances exist which could constitute an **Event of Default** after the giving of notice or the passage of time, or both.

**2.03** This **Agreement** is expressly conditioned upon **Borrower** being current with all outstanding interest, payments, or other charges due **Lender**. This **Agreement** shall be of no effect until **Lender** has received all outstanding interest, payments, or other charges that may be due as of the date of this **Agreement**.

**2.04 Borrower** hereby acknowledges and agrees that the execution of this **Agreement** shall in no way be construed as imposing on the **Lender** any obligation to offer the **Borrower** any further extensions of the date on which the **Indebtedness** becomes due and payable in full, or the modification of any other terms of the **Loan**.

**2.05** All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the loan documents. In the event of any inconsistency between capitalized terms used herein and otherwise defined in loan documents, the terms of this **Agreement** shall govern.

**2.06** The covenants and agreements herein set forth shall bind and inure to the benefit of the parties hereto, their heirs, successors and assigns.

**2.07** The consummation of the transactions hereby contemplated and the performance of the obligations of the **Borrower** under and by virtue of the loan documents will not result in any breach of, or constitute a default under, any mortgage, security deed, deed of trust, lease, bank loan or credit agreement, trust agreement or other instrument to which the **Borrower** is a party or by which it may be bound or affected.

**2.08** There are no actions, suits or proceedings pending, or to the knowledge of the **Borrower**, threatened, against, or affecting the **Borrower**, or the **Secured Property**, or involving the validity or enforceability of any of the loan documents or the priority of the lien thereof.

**2.09** There has been no material adverse change in the financial condition of the **Borrower** since the date of the last financial statements delivered to the **Lender**. No bankruptcy or insolvency case or proceedings of any kind have been filed, threatened or are outstanding by or against the **Borrower**, and the **Borrower** is current with regard to payment and performance of all loans, contracts and other agreements or obligations affecting the **Borrower**.

**2.10** This **Agreement** may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

**2.11** The **Borrower** hereby acknowledges and agrees that the **Borrower** has no claim, offset, or defense against the **Lender** or with respect to any collateral securing the **Loan**.

**2.12 THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF CONNECTICUT, WAS EXECUTED AND DELIVERED BY THE BORROWER AND ACCEPTED BY THE LENDER IN THE STATE OF CONNECTICUT, WHICH STATE THE BORROWER AND THE LENDER AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY, AND PERFORMANCE. THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER AND UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CONNECTICUT, WITHOUT REGARD TO CHOICE OF LAW CONSIDERATIONS, APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, PRIORITY, ENFORCEMENT, AND FORECLOSURE OF THE LIENS AND SECURITY INTERESTS CREATED IN THE MORTGAGED PROPERTY UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE JURISDICTION IN WHICH THE MORTGAGED PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH JURISDICTION, THE LAW OF THE STATE OF CONNECTICUT SHALL GOVERN THE VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS, AND THE DEBT OR OBLIGATIONS ARISING HEREUNDER.**

**2.13 THE LENDER AND THE BORROWER HEREBY AGREE THAT THE EXECUTION AND DELIVERY OF THIS AGREEMENT, AS WELL AS PERFORMANCE OF THE OBLIGATIONS REQUIRED HEREUNDER, CONSTITUTE THE TRANSACTION OF BUSINESS WITHIN THE STATE OF CONNECTICUT. IF THE BORROWER DOES NOT HAVE A REGISTERED AGENT IN THE STATE OF CONNECTICUT, THEN THE BORROWER HEREBY APPOINTS THE CONNECTICUT SECRETARY OF STATE AS ITS ATTORNEY AND AGREES THAT ANY PROCESS IN ANY CASE OF CONTROVERSY ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT MAY BE SERVED UPON THE CONNECTICUT SECRETARY OF STATE AND SHALL HAVE THE SAME VALIDITY AS IF SERVED UPON THE UNDERSIGNED PERSONALLY. THE LENDER AND THE BORROWER HEREBY AGREE THAT ANY APPROPRIATE STATE OR FEDERAL DISTRICT COURT LOCATED IN THE STATE OF CONNECTICUT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY CASE OR CONTROVERSY ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT AND SHALL BE A PROPER FORUM IN WHICH TO ADJUDICATE SUCH CASE OR CONTROVERSY. THE LENDER AND THE BORROWER AGREE TO SUBMIT TO PERSONAL JURISDICTION IN THE STATE OF CONNECTICUT IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT AND THE LOAN DOCUMENTS.**

**[Remainder of this page intentionally left blank]**

EXHIBIT A

**IN WITNESS WHEREOF**, the undersigned have executed this Extension and Modification Agreement on the date first set forth above.

**ALLEO HOLDINGS CORPORATION**, as Borrower

8/16/2024
**Date**

By: _Adonis Lockett_
**Name:** Adonis Lockett
**Title:** President

**ACKNOWLEDGED AND ASSENTED TO:**
**Adonis Lockett**, as Guarantor

8/16/2024
**Date**

_Adonis Lockett_

**Toorak Capital Partners, LLC**, as Lender

8/16/2024
**Date**

By: _Mary Tessitore_
**Name:** Mary Tessitore
**Title:** Authorized Signer